UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| ANDREA GUARINO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| WYETH LLC; | § | CASE NO. _____ |
| SCHWARZ PHARMA, INC.; | § | |
| TEVA PHARMACEUTICALS USA, INC. | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| _____ | / | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, ANDREA GUARINO, and for her cause of action against Defendants, Wyeth LLC, Schwarz Pharma, Inc., and Teva Pharmaceuticals USA, Inc. and allege the following:

### I. PARTIES

1.      Plaintiff, ANDREA GUARINO, is an individual resident and citizen of Pinellas County, Florida.

2.      Defendant Wyeth LLC (hereinafter referred to as "Wyeth") is a Delaware corporation with its principal place of business at Five Giralda Farms, Madison, NJ 07940.  Wyeth, LLC is a wholly owned subsidiary of Pfizer, LLC. Pfizer, LLC is wholly owned by Pfizer, Inc. References to Wyeth include Wyeth individually, Wyeth Inc., Wyeth Pharmaceuticals, Inc. and collectively all divisions and/or subsidiaries, as well as successor-in-interest to A.H. Robins, Inc., American Home Drugs Corporation and ESI,

1

Lederle, Inc. Defendant Wyeth may be served through its registered agent: C T Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

3.    Defendant, Schwarz Pharma, Inc., ("Schwarz") is a Delaware corporation, with its principal place of business in Mequon, Wisconsin. References to Schwarz include Schwarz individually and collectively all of its predecessors in interest and divisions. Defendant Schwarz may be served through its registered agent: Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.    Defendant, Teva Pharmaceuticals USA, Inc., (hereinafter referred to as "Teva") is a Delaware corporation with its principal places of business in Delaware and Pennsylvania. Teva is a wholly owned subsidiary of Teva Pharmaceuticals, Ltd. Teva may be served with process through its registered agent: Corporate Creations, 11380 Prosperity Farms Road #221E, Palm Beach Gardens, Florida 33410.

5.    Defendants Wyeth, Schwarz, and Teva, identified supra, inclusive, and each of them, may be referred to in this Complaint collectively as the "Drug Company Defendants".

6.    At all times material hereto, the Drug Company Defendants were engaged in the business of testing,  developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide and/or metoclopramide HCl tablets in the State of Florida and in interstate commerce. The Drug Company Defendants are subject to the jurisdiction and venue of this Court.

2

## II. VENUE AND JURISDICTION

7.      Both jurisdiction and venue are proper in the Middle District of Florida.  The Defendants conduct or have conducted business activity in Pinellas County, Florida and the Defendants have distributed products throughout Pinellas County, Florida. Mrs. Guarino was prescribed, purchased and consumed the Defendants' products in Pinellas County, Florida.

8.      Jurisdiction is based on complete diversity between the Plaintiff and all of the Defendants pursuant to 28 U.S.C. § 1332.

9.      Venue is proper as to causes of action against all Defendants because:

      a.      A substantial part of the cause of action accrued in the State of Florida in that Mrs. Guarino received and consumed the Defendants' pharmaceutical products in Pinellas County, Florida and sustained injury in Pinellas County, Florida.

      b.      All of the Defendants have directed their products into Pinellas County, Florida.

      c.      All of the Defendants have sold their products in Pinellas County, Florida.

      d.      Pinellas County sits in the Middle District of Florida.

10.      The amount in controversy exceeds $75,000.00.

## III. FACTUAL BACKGROUND REGARDING REGLAN/METOCLOPRAMIDE

11.      This case involves the long term ingestion of Reglan/metoclopramide by the Plaintiff as prescribed by her physician(s).

12.      Reglan/metoclopramide is a prescription medication classified as a GI stimulant, antiemetic and Dopaminergic blocking agent. It is indicated for short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

13.      Reglan/metoclopramide is indicated for treatment use of no greater than twelve (12) weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and or esophageal reflux for durations that exceeded twelve (12) weeks.

14.      Patients who use Reglan/metoclopramide for long periods (exceeding twelve (12) weeks) are at a significant and unreasonably dangerous increased risk of developing a severe and permanent neurological movement disorder, known as tardive dyskinesia and/or akathisia.

15.      Other serious side effects that may be caused by ingesting Reglan/metoclopramide for longer periods of time include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathisia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

16.      Patients who use Reglan/metoclopramide for long periods (greater than 12 weeks) who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

17.      Tardive dyskinesia and akathisia are serious side effects associated with the ingestion of Reglan/metoclopramide and are debilitating neurological disorders that often result in involuntary and uncontrollable movements of the head, neck, face, arms, legs and/or trunk, as well as, involuntary facial grimacing and tongue movements, including tongue thrusting, tongue chewing and/or other involuntary movements.

4

18.     Presently, there is no known cure for tardive dyskinesia or akathisia.

## IV. ALLEGATIONS COMMON TO ALL COUNTS

19.     Plaintiffs bring this action for the purpose of recovering damages for the personal injuries Mrs. Guarino has suffered as a result of being prescribed and ingesting Reglan, metoclopramide and/or metoclopramide HCl (hereinafter referred to as "Reglan/metoclopramide").

20.     In or around May 2007, Mrs. Guarino's physician prescribed Reglan/Metoclopramide at a dosage of 10mg to treat abdominal pain/digestive problems. Mrs. Guarino continued to take Reglan/metoclopramide through and until approximately August 2007.

21.     The active ingredient, metoclopramide and metoclopramide HCl, is a dopamine antagonist.

22.     Upon information and belief, in prescribing the Reglan/metoclopramide to Mrs. Guarino on a long-term basis, her prescribing doctor relied upon information published in the package inserts and/or the Physicians' Desk Reference (hereinafter referred to as "PDR") or otherwise disseminated by the Reference Listed Drug Company (hereinafter referred to as "RLD") and/or the New Drug Application Holder (hereinafter referred to as "NDA Holder").

23.     Mrs. Guarino ingested the Reglan/metoclopramide as prescribed.

24.     Mrs. Guarino used the pharmaceutical drugs Reglan/metoclopramide without substantial change in the condition of the drugs between the time of design and manufacture of the drugs and the time she used the drugs as directed.

25.   Mrs. Guarino's long-term ingestion of the Reglan/metoclopramide caused her injuries.

26.   Mrs. Guarino was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, or by the NDA Holders.

27.   In or around October 2007, Mrs. Guarino was exhibiting abnormal movements which have since been linked to her use of Reglan/metoclopramide.

28.   Mrs. Guarino's use of Reglan/metoclopramide, as prescribed, resulted in overexposure to the drugs which have caused her to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems, specifically tardive dyskinesia, a severe and often permanent disfiguring neurological movement disorder.

29.   Mrs. Guarino's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community, Mrs. Guarino, and other foreseeable users of the drug.

30.   Mrs. Guarino has experienced and will continue to experience medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages doe to the prescription and ingestion of this drug.

31.   Recognizing the inadequate nature of the Defendants' label and warnings, in February 2009 the United States Food and Drug Administration (hereinafter referred to as "FDA") issued an advisory requiring the addition of a **Boxed Warning** for Reglan/metoclopramide.  This new

6

warning, appearing at the top of the label, spells out that "Chronic treatment with metoclopramide can cause tardive dyskinesia, a serious movement disorder that is often irreversible . . . ." Additionally, the new Boxed Warning now tells physicians and patients that "Prolonged treatment (greater than 12 weeks) with metoclopramide should be avoided in all but rare cases . . . ." Finally, the FDA is now requiring that manufacturers/Defendants implement a Risk Evaluation and Mitigation Strategy because the FDA has determined that the use of Reglan/metoclopramide "pose[s] a serious and significant public health concern requiring the distribution of a Medication Guide." This Medication Guide, setting out all the risks of the drug and to be given to all users "is necessary for the patients' safe use of Reglan (metoclopramide) . . . ." Unfortunately, neither this Boxed Warning nor the Medication Guide was available to Mrs. Guarino.

## V. DEFENDANTS' WRONGFUL CONDUCT

32.    This case involves Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide, when taken for long periods of time, caused serious, permanent and debilitating side effects, including tardive dyskinesia.

33.    Defendants jointly and severally marketed, manufactured and distributed Reglan/metoclopramide and encouraged the long term use of these drugs, misrepresented the effectiveness of these drugs and concealed the drug's dangerous side effects.

34.    Reglan/metoclopramide is indicated as short-term therapy for symptomatic gastroesophageal reflux and acute and recurrent diabetic gastric stasis.

35.    Reglan/metoclopramide is indicated for use for no greater than twelve weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and/or esophageal reflux for durations that exceed twelve weeks.

36.    Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder.

37.    Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

38.    Patients who use Reglan/metoclopramide for long periods who are not able to effectively metabolize it are at a greater risk of developing these serious and permanent injuries.

39.    Tardive dyskinesia, one of the serious side effects associated with the ingestion of Reglan/metoclopramide is a debilitating neurological disorder that often results in involuntary and uncontrollable movements of the head, neck, face, arms, legs and trunk, in addition to facial grimacing, uncontrollable tongue movements and other involuntary movements.  Presently, there is no cure for tardive dyskinesia.

40.    Plaintiff, ANDREA GUARINO, was diagnosed with tardive dyskinesia, caused by the ingestion of metoclopramide, which is permanent.

41.    Wyeth is the successor in interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter referred to as "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)[1] schema in 1983.

42.    Defendant, Wyeth's predecessor-in-interest, A.H. Robins Company, Inc. expressly warranted to some physicians that Reglan/metoclopramide is safe for long-term use.

43.    A.H. Robins knew that its warranties regarding safety for long-term use would be relied upon by ordinary, reasonable and prudent physicians who would share that information with

---

[1] Upon information and belief, Wyeth is the holder of multiple NDAs for Reglan, metoclopramide and

other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/metoclopramide's safety for long-term use.

44.    A.H. Robins' express warranties about the safety of Reglan/metoclopramide for long-term use were false and intentionally and negligently misleading.

45.    As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made by A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming there from.

46.    Wyeth manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."[2]

47.    Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.

48.    Wyeth knew that the data and information would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/metoclopramide once the NDA was approved and Wyeth was listed as the Reference Listed Drug Company for the drug.

49.    Wyeth intentionally and negligently disseminated misleading information to physicians across the county, through the PDR, about the risks of long-term ingestion of Reglan/metoclopramide and the increased risk of extrapyramidal side effects, including tardive dyskinesia.

---

metoclopramide HCl.
[2] Upon information and belief, ESI was a former subsidiary which merged into Wyeth on or about December 15, 1998.

50.   Defendant, Schwarz purchased from Wyeth the rights and *liabilities* associated with Reglan/metoclopramide, the terms of which, upon information and belief, obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/metoclopramide.

51.   Defendant, Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/metoclopramide that were not publicly available.[3]

52.   Because Defendant, Schwarz acquired Defendant, Wyeth's Reglan/metoclopramide assets and liabilities while Wyeth was involved in on-going litigation regarding Reglan/metoclopramide, and nevertheless agreed to indemnify Wyeth against all claims related to the ingestion of the drug, Schwarz knew or should have known that the NDA label for Reglan/metoclopramide (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug, and knew or should have known of the safety issues surrounding it.

53.   Under the FDA schema, Wyeth was and is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan/metoclopramide.

54.   Under the FDA schema, Defendant,  Schwarz was and remains the RLD and/or NDA Holder for Reglan/metoclopramide.

55.   At all times material hereto, Defendants,  Wyeth and Schwarz, as the NDA Holder and/or RLD companies, were aware of the serious side effects caused by Reglan/metoclopramide including, but not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

56.   Defendants, Wyeth and Schwarz, have a duty to ensure their warnings to the medical

---

[3]  Plaintiffs do not have information regarding the maximum amount of liability under the Defendants'

community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

57.     Defendants, Wyeth and Schwarz, represented that Reglan/metoclopramide was safe for use to treat gastritis/gastroesophageal reflux knowing that the drug was not safe for that purpose and was dangerous to the health and body of Plaintiff.

58.     Defendants, Wyeth and Schwarz, represented that Reglan/metoclopramide caused minimal side effects knowing that the drug caused central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented.

59.     Defendants, Wyeth and Schwarz, had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan/metoclopramide for long-term use that was not safe for patients.

60.     Defendants, Wyeth and Schwarz had, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan/metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

61.     Defendants, Wyeth and Schwarz, also had actual knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal side effects of Reglan/metoclopramide in patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

62.     Defendants, Wyeth and Schwarz, knew or through the exercise of reasonable care should have known, that many patients who use Reglan/metoclopramide are not able to effectively metabolize it and that as a foreseeable consequence of their inability to effectively metabolize, those patients have a greater risk of developing serious and permanent injuries.

indemnification agreement.

63.   Defendants, Wyeth and Schwarz, had actual knowledge of facts which demonstrated that representations in the Reglan/metoclopramide package insert, the PDR and literature they distributed to physicians were false and misleading.

64.   Defendants, Wyeth and Schwarz, failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff, ANDREA GUARINO, and other foreseeable users.

65.   It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of cheaper, generic drug products that are therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.

66.   Defendants, Wyeth and Schwarz, as prescription drug manufacturers and/or distributors, knew or should have realized that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

67.   Defendants, Wyeth and Schwarz,  knew or ought to have realized that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product to give the impression that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

68.   Defendants, Wyeth and Schwarz, knew or ought to have known that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

69.   Defendants, Wyeth and Schwarz, knew or ought to have realized that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or

otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

70.   Defendants, Wyeth and Schwarz, knew of should have known, specifically, that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Reglan/metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/metoclopramide.

71.   Defendant, Teva submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the RLD companies, requesting permission to manufacture, market, and distribute generic Reglan/metoclopramide.

72.   Under the ANDA process, the Code of Federal Regulations *required* Teva to submit labels for Reglan/metoclopramide initially identical in all material aspects to the reference listed drug label.

73.   Under the Code of Federal Regulations, Teva had a duty to ensure its Reglan/metoclopramide warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/metoclopramide.

74.   Under the Code of Federal Regulations, if Teva discovers information in the course of the fulfillment of it's duties as outlined above, it must report that information to the medical community, Plaintiffs and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.

75.   Defendant, Teva, failed to investigate the accuracy of its metoclopramide and/or metoclopramide HCl drug labels.

76.   Defendant, Teva, failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

77.   Defendant, Teva, relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide.

78.   Under the FDA scheme, if the FDA approves a label change as requested by an ANDA holder, the NDA holder (also referred to as the RLD company) must also amend its label.

79.   Defendant, Teva, failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide.

80.   All Defendants to this action who have manufactured, marketed and distributed generic Reglan/metoclopramide have failed in the same manner as Defendant, Teva.

81.   Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

82.   Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

83.   Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

84.   Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/metoclopramide, to exercise reasonable care to ensure that

they did not create unreasonable risks of personal injury to others.

85.     Reglan/metoclopramide was widely advertised by Defendants as a safe and effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD) and other gastrointestinal disorders.

86.     Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.Defendants failed to review all adverse drug event information[4] and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.

87.     Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide.

88.     Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time.

89.     Defendants failed to report data, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/ metoclopramide.

90.     Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/metoclopramide can lead to tardive dyskinesia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than twelve weeks "cannot be recommended."

91.     Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/metoclopramide therapy to be reasonably

---

[4]   Defendants are required to review all adverse drug experience information obtained or otherwise received . . . from any source . . . including derived from postmarketing clinical investigations, postmarketing epidemiological/surveillance studies, reports from the scientific literature, and unpublished scientific reports. 21 C.F.R. § 317.80(b); *Mensing v. Wyeth, Inc., et al.,* Civil No. 07-3919 (DWF/SRN), 2008 WL 4724286, (D. Minn. Oct. 30, 2008).

safe, was unscientific and false.

92.     Defendants concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dystonia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

93.     Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroporesis and/or other gastric disorders with Reglan/metoclopramide for longer than twelve weeks is unlikely to be reasonably safe.

94.     Some or all of the other Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products received clear notice of Wyeth's suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

## VI. COUNT I -- NEGLIGENCE

95.     Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

96.     Defendants owed a duty to the general public and specifically to Plaintiffs to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/ metoclopramide at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff, ANDREA GUARINO, during foreseeable use.   Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they failed to warn that, as designed, Reglan/metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff, ANDREA GUARINO, during foreseeable use.

97.   Defendants breached their duty and were negligent in their actions, misrepresentations,

and omissions toward Plaintiff, ANDREA GUARINO, in that Defendants:

a.   Failed to use due care in developing, testing, designing and manufacturing
     Reglan/metoclopramide so as to avoid the aforementioned risks to individuals
     when Reglan/metoclopramide was being used for treatment of patients;

b.   Failed to accompany their product with proper or adequate warnings regarding
     adverse side effects and health risks associated with the use of
     Reglan/metoclopramide and the comparative severity and duration of such
     adverse effects;

c.   Failed to accompany their product with proper or adequate rate of incidence or
     prevalence of permanent irreversible neurological damage;

d.   Failed to provide warnings that accurately reflected the symptoms, scope or
     severity of the side effects and health risks;

e.   Failed to conduct adequate pre-clinical and clinical testing and post-marketing
     surveillance to determine the safety of Reglan/metoclopramide;

f.   Failed to provide adequate training or information to medical care providers for
     appropriate use of Reglan/metoclopramide;

g.   Failed to adequately warn consumers and medical prescribers (but instead actively
     encouraged the sale of Reglan/metoclopramide), about the following: (1) that
     Reglan/metoclopramide should not be prescribed for more than twelve weeks; (2)
     that Reglan/metoclopramide can cause neuromuscular side effects, including, but
     not limited to, tardive dystonia; (3) that Reglan/metoclopramide should be
     discontinued in the face of involuntary facial, tongue, jaw, limb or trunk
     movements; and (4) that the health risks posed by Reglan/metoclopramide may
     become debilitating, difficult, and painful, necessitating lengthy and/or repeated
     visits to the doctor, clinic, or hospital;

h.   Failed to adequately test and/or warn about the use of Reglan/metoclopramide,
     including, without limitation, the possible adverse side effects and health risks
     caused by the use of Reglan/metoclopramide;

i.   Failed to adequately warn users, consumers and physicians about the severity,
     scope and likelihood of neurological damage and related dangerous conditions to
     individuals taking Reglan/metoclopramide; and

j.   Representing to physicians, including but not limited to ANDREA GUARINO'S
     prescribing physician, that this drug was safe and effective for use.

98.   The Reglan/metoclopramide was in substantially the same condition when it was

ingested by Plaintiff, ANDREA GUARINO, as it was in when it left the control of the Defendants. Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff, ANDREA GUARINO, was not due to any voluntary action or contributory negligence of Plaintiff. The Reglan/metoclopramide was consumed by Plaintiff, ANDREA GUARINO, as directed and without change in its form or substance.

99.     Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of Plaintiff, ANDREA GUARINO'S injuries and damages. Plaintiffs seek all damages to which they may be justly entitled.

## VII. COUNT II -- STRICT LIABILITY

100.    Plaintiff hereby incorporate by reference all of the above allegations as if fully set forth herein.

101.    Plaintiff, ANDREA GUARINO, claims that Defendants are liable to her under the theory of strict products liability. Defendants were at all times relevant to this suit, and now are, engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Reglan/metoclopramide at issue in this lawsuit. The Reglan/metoclopramide manufactured by Defendants reached Plaintiff, ANDREA GUARINO, without substantial change and was ingested as directed. The Reglan/metoclopramide was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff, ANDREA GUARINO.

102.    Reglan/metoclopramide was unreasonably defective in design, considering the utility of the product and the risk involved in its use, because as designed, Reglan/metoclopramide could cause injuries such as those suffered by Plaintiff during foreseeable use. This fact was known to Defendants at the time Reglan/metoclopramide was placed into the stream of commerce, but was not readily recognizable to an ordinary consumer, including Plaintiff. Nonetheless, Defendants

failed to warn that Reglan/metoclopramide as designed was capable of causing serious personal injuries such as those suffered by Plaintiff, ANDREA GUARINO during foreseeable use. Such a failure to warn rendered the Reglan/metoclopramide unreasonably dangerously defective as marketed.

103.    The defective and unreasonably dangerous nature of Reglan/metoclopramide was a direct, proximate and producing cause of Plaintiff, ANDREA GUARINO'S injuries and damages.  Under strict products liability theories set forth in Restatement (Second) of Torts, Pharmaceutical Defendants are liable to Plaintiffs for all damages claimed in this case, including punitive damages.

## VIII. COUNT III -- BREACH OF WARRANTIES

104.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

105.     Defendants were at the time of the acts forming the basis of this lawsuit, and now are, merchants with respect to the Reglan/metoclopramide at issue in this lawsuit. Defendants marketed and promoted their Reglan/metoclopramide as safe and efficacious for its intended uses. The Reglan/metoclopramide consumed by Plaintiff reached her without substantial change in its condition and was used by Plaintiff as intended by Defendants.  Defendants expressly and impliedly warranted that the Reglan/metoclopramide were not unreasonably dangerous and instead were merchantable and fit for its intended use by Plaintiff, ANDREA GUARINO.

106.    Defendants breached these warranties (both express and implied) as the Reglan/metoclopramide was not merchantable, was unfit for its intended use and was unreasonably dangerous when comparing the benefits to the risks associated with its use. Plaintiff, ANDREA GUARINO was injured as a result of these breaches of warranties.

## IX. COUNT IV -- MISREPRESENTATION AND FRAUD

107.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

108.    Defendants, through their advertising, labeling, marketing, and sales/detail persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such representations, with the intent that Plaintiff rely on such material representations; Plaintiff, ANDREA GUARINO acted in actual and justifiable reliance on such material misrepresentations and was injured as a result.

109.    In addition, and in the alternative if necessary, Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff, ANDREA GUARINO rely on Defendants' misrepresentations; Plaintiff, ANDREA GUARINO acted in actual and justifiable reliance on Defendants' representations and was injured as a result.

110.    Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff, ANDREA GUARINO relating to the Reglan/metoclopramide at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

111.    Defendants misrepresented to the FDA, Plaintiff and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

112.    Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than what they had represented to Plaintiff, ANDREA GUARINO and the health care industry generally.    Specifically, Defendants

misrepresented to and/or actively concealed from Plaintiff, ANDREA GUARINO and the consuming public that:

a.     Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

b.     Patients on Reglan/metoclopramide should not take it more than twelve weeks;

c.     Reglan/metoclopramide was not fully and adequately tested for the neuromuscular side effects.

113.    As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiff, ANDREA GUARINO suffered significant and ongoing injuries and damages.  Further, because Defendants' conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiffs are entitled to an award of exemplary damages.

## X. COUNT V -- NEGLIGENCE PER SE

114.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

115.    The product label and package insert for Reglan/metoclopramide is misbranded within the meaning of 21 U.S.C. § 352(a) and (f) because it was false and misleading and failed to give adequate warnings and directions for use by physicians who prescribe Reglan/metoclopramide. Because the Defendants each had a statutory duty under 21 U.S.C. § 352(a) and (f) not to misbrand Reglan/metoclopramide and because each of them violated this duty, they were guilty of negligence per se.  In addition, and more particularly, because Defendants knew, or should have known, that physicians commonly prescribed Reglan/metoclopramide for long-term use, beyond the 12 week intended use that was approved by the FDA, pursuant to 21 CFR 201.128, long-term use became an "intended use" which required Defendants, and each of them, to provide adequate labeling for such a drug which accords with such other uses to which the article was commonly prescribed. Defendants' failure to adequately warn about the magnitude of the

risk associated with long-term use constitutes negligence per se.  Defendants' negligence per se proximately caused injury to Plaintiff, ANDREA GUARINO as described more fully herein.

## XI. PUNITIVE DAMAGES AGAINST ALL DEFENDANTS

116.    Plaintiffs hereby incorporate by reference all of the above allegations as if fully set forth herein.

117.    Plaintiffs would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference and/or malice so as to give rise to the award of exemplary damages.

118.    Plaintiffs would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an act or omission,

   a.    which, when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiffs, and

   b.    of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiffs. The gross negligence of the Defendants was a proximate cause of the injuries and damages suffered by Plaintiffs.

## XII. DAMAGES

119.    As a direct and proximate result of the above-described acts and omissions of Defendants, Plaintiffs have incurred actual damages in excess of $75,000.00, including but not limited to the following:

   (a)    Reasonable and necessary medical expenses incurred in the past;

   (b)    Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

(c)    Lost wages and earnings, past and future;

   (d)    Conscious physical pain and suffering experienced in the past;

(e)   Conscious physical pain and suffering reasonably likely to be experienced in the future;

(f)   Mental anguish in the past;

(g)   Mental anguish likely to be experienced in the future;

(h)   Physical disfigurement in the past;

(i)   Physical disfigurement likely to be experienced in the future;

(j)   Physical impairment in the past;

(k)   Physical impairment likely to be experienced in the future;

(l)   Pre and post-judgment interest at the lawful rate;

(m)   Exemplary damages; and

(n)   Such other applicable damages as the Court deems appropriate.

### XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ANDREA GUARINO, pray that upon final determination of these causes of action Plaintiffs receive a judgment against Defendants, Wyeth, Schwarz and Teva as follows:

(a)   Actual damages as alleged, jointly and/or severally against Defendants, in excess of the jurisdictional minimum;

(b)   Punitive damages alleged against Defendants, including Plaintiffs' attorney fees, in an amount to be determined;

(c)   Costs of court and reasonable attorney fees necessary for preparation of this case for trial;

(d)   Prejudgment interest at the highest rate allowed by law;

(e)   Interest on the judgment at the highest legal rate from the date of judgment until collected; and

(f)   All such other and further relief at law and in equity to which Plaintiffs may show themselves to be justly entitled.

## XIV. JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED 23RD day of December, 2010.

BRENT R. BIGGER, ESQUIRE
Florida State Bar No. 823961
**ABRAHAMSON & UITERWYK**
900 West Platt Street
Tampa, FL 33606
Telephone (813) 222-0500
Facsimile (813) 221-4738
bbigger@uiterwyklaw.com


DANIEL J. MCGLYNN
Louisiana State Bar No. 17051
TERRANCE J. DONAHUE, JR.
Louisiana State Bar No. 32120
**MCGLYNN, GLISSON & MOUTON**
340 Florida Street
Baton Rouge, LA   70801
Telephone (225) 344-3555
Facsimile (225) 344-3666
Danny@mcglynnglisson.com

**ATTORNEYS FOR PLAINTIFFS**